## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MSCI 2007-IQ16 BLUE HILL AVENUE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> A. HIRSCH REALTY, LLC, ANDREW SHERMAN and SARA SHERMAN, <br><br> Defendants. | C.A. No. 17-12359 |

## VERIFIED COMPLAINT

This is an action to enforce a defaulted mortgage loan brought against the borrower, A. Hirsch Realty, LLC ("Hirsch"), and two guarantors, Andrew Sherman and Sara Sherman (collectively, the "Shermans").[1]  The balance currently due on the note is in excess of **$2,500,000**.

## PARTIES

1.     MSCI 2007-IQ16 Blue Hill Avenue, LLC ("MSCI"), is a Delaware limited liability company, having an address c/o LNR Partners, LLC, 1601 Washington Avenue, Suite 800, Miami Beach, FL 33139.  MSCI's sole member is U.S. Bank National Association ("U.S. Bank"), as Trustee for the Registered Holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16.  U.S. Bank is a national banking association with its main offices located in Minneapolis, Minnesota.  By virtue of 28 U.S.C. §1348, U.S. Bank is a citizen of the State of Minnesota.

---

[1]     Unless otherwise noted, capitalized terms not defined herein shall have the meaning ascribed to them in the Mortgage, Assignment of Leases and Rents and Security Agreement, Assignment of Leases and Rents, Guaranty, and/or in the Note, Mortgage and Other Loan Documents Modification Agreement, as applicable.

2.      Hirsch is a Massachusetts limited liability company with a principal place of business located at 1613 Blue Hill Avenue, Suite 201, Mattapan, Massachusetts.  On information and belief, the manager and sole member of Hirsch is Andrew Sherman.  Hirsch is thus a citizen of Massachusetts.

3.      Andrew Sherman is an individual residing at 167 Salisbury Road, Brookline, Massachusetts.

4.      Sara Sherman is an individual residing at 167 Salisbury Road, Brookline, Massachusetts.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) because this lawsuit involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue in this district is proper in accordance with 28 U.S.C. §1391(b)(1).

## FACTS

**THE LOAN**

7.      On or about August 1, 2007, Hirsch secured a loan from NCB, FSB, a Federal Savings Bank, in the original principal sum of $2,300,000 with respect to certain premises located at 1613-1615 Blue Hill Avenue, Mattapan, Massachusetts (the "Property").

8.      The terms and conditions of the loan are evidenced by, among other documents, a Mortgage Note (the "Note"), a Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"), an Assignment of Leases and Rents (the "Assignment"), a Guaranty (Recourse Obligation) (the "Guaranty"), a Note, Mortgage and Other Loan Documents Modification Agreement (the "Modification Agreement"), and a Joinder By and Agreement of

Guarantor (the "Joinder") (collectively, together with all documents executed in connection with any of the foregoing, the "Loan Documents").

9.      Pursuant to the terms of the Mortgage, all Rents were assigned to the Mortgagee and, upon an Event of Default, the Mortgagee became immediately entitled to possession of all Rents.[2]  A similar right was afforded to the Assignee pursuant to the Assignment.[3]

10.      True and correct copies of the Note, Mortgage, Assignment, Guaranty, Modification Agreement, and Joinder are attached hereto as Exhibits A (the Note), B (the Mortgage), C (the Assignment), D (the Guaranty), E (the Modification Agreement), and F (the Joinder), respectively.

11.      As is evidenced by an Allonge (a true and correct copy of which is attached to the Note (Exhibit A)), NCB assigned the Note to LaSalle Bank National Association ("LaSalle"), as Trustee for the Holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16.

12.      As is evidenced by an Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement (a true and correct copy of which is attached hereto as Exhibit G), by an Assignment of Assignment of Leases and Rents (a true and correct copy of which is attached hereto as Exhibit H), and by an Assignment of Collateral Agreements and Other Loan Documents (a true and correct copy of which is attached hereto as Exhibit I), NCB assigned the Mortgage, the Assignment, and the other Loan Documents, including the Guaranty, to LaSalle.

13.      Bank of America, N.A. ("Bank of America"), is the successor by merger to LaSalle, and, as LaSalle's successor, Bank of America became the Trustee for the Holders of

---

[2]      Capitalized terms in this sentence have the definitions ascribed to them in the Mortgage.

[3]      Capitalized terms in this sentence have the definitions ascribed to them in the Assignment.

ME1 26045337v.2

Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16.

14.     As is evidenced by an Omnibus Assignment of Loan Documents, Bank of America assigned the Loan Documents to U.S. Bank, as Trustee for Morgan Stanley Capital I, Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16 ("U.S. Bank").  A true and correct copy of this Omnibus Assignment is attached hereto as Exhibit J.

15.     This assignment is further evidenced by an Allonge (a true and correct copy of which is attached to the Note (Exhibit A)), a document entitled Assignment of Leasehold Mortgage (a true and correct copy of which is attached hereto as Exhibit K), and a document entitled Assignment of Assignment of Leases and Rents (a true and correct copy of which is attached hereto as Exhibit L).

16.     As is evidenced by a Limited Power of Attorney (a true and correct copy of which is attached hereto as Exhibit M), U.S. Bank appointed LNR Partners, LLC (as Special Servicer) its Attorney-in-Fact to service certain loan documents, including the Loan Documents.

17.     As is evidenced by a subsequent Omnibus Assignment of Loan Documents (a true and correct copy of which is attached hereto as Exhibit N), U.S. Bank assigned the Mortgage to MSCI.

18.     This assignment is further evidenced by an Allonge (a true and correct copy of which is attached to the Note (Exhibit A)), an Assignment of Mortgage, Assignment of Leases and Rents, and Security Agreement (a true and correct copy of which is attached hereto as Exhibit O), and an Assignment of Assignment of Leases and Rents (a true and correct copy of which is attached hereto as Exhibit P).

ME1 26045337v.2

**THE GUARANTY**

19.    As part of the original loan to Hirsch, the Shermans, along with Franklin Sherman

(who is now deceased), agreed to guaranty the loan pursuant to the terms of the Guaranty.

20.    Under the Guaranty:

Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise.  Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

Guaranty, Art. I, Sect. 1.1 (Exhibit D).

21.    A Guaranteed Obligation includes:

those obligations or liabilities of Borrower to Lender arising from any loss, damage, cost, expense, liability, claim or other obligation incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following … (f) the misapplication or conversion by Borrower of … (iii) any Rents (as defined in the Mortgage) following an Event of Default.

*Id.* at Art. I, Sect. 1.2.

22.    The Guaranteed Obligations also include full recourse liability "if any petition for

federal bankruptcy … shall be filed (i) by Borrower …."  *Id.* at Art. I, Sect. 1.2.

23.    The Guaranty goes on to say:

If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein.

*Id.*, Art. I, Sect. 1.5.

24.     The Guaranty also contains a costs of collection provision requiring the Guarantors, if they fail to timely perform any of the provisions of the Guaranty, to immediately pay upon demand all actual and reasonable out-of-pocket costs and expenses (including court costs and reasonable attorneys' fees) incurred in enforcing the Guaranty.   *See* Guaranty, Art. II, Sect. 1.8.

25.     MSCI hereby demands that the Shermans pay all of its reasonable costs and expenses in enforcing the Guaranty, including its reasonable attorneys' fees and expenses incurred in commencing and prosecuting this action.

**THE LOAN MODIFICATION**

26.     A Guaranteed Obligation first arose under the Guaranty as a result of Hirsch filing a Chapter 11 Petition under the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts, Case No. 12-12092-WCH.

27.     Subsequently, Hirsch entered into the Modification Agreement which reinstated and modified the Loan Documents.

28.     Under the Modification Agreement, the Borrower Parties agreed to fully cooperate with the Lender in the Lender's exercise of its rights under the Loan Documents and under the Modification Agreement, including the Lender's rights to acquire possession and title to the Property and other Collateral at the earliest possible date.[4]   *See* Modification Agreement, Sect. 5.2(b).

29.     Under the Modification Agreement, the Borrower Parties agreed to be personally liable for the full Indebtedness and all other obligations of the Borrower to Lender under the

---

[4]     Capitalized terms in this paragraph, and in paragraphs 30 and 35,  have the definitions ascribed to them in the Modification Agreement.

6

Loan Documents for any failure of the Borrower Parties after an Event of Default occurring after the Effective Date to comply with the Cooperation Covenants.

30.     As part of the modification of the Loan Documents following Hirsch's bankruptcy filing, the Shermans executed the Joinder.

31.     The Joinder both reaffirms the Sherman's Guaranty and adds to the Guaranty a section entitled "Additional Liability of Guarantor."  Joinder, Sect. 2.

32.     Under Section 1 of the Joinder, the Shermans acknowledge that, in light of Hirsch's bankruptcy filing, they are fully liable for Borrower's obligations under the Loan Documents.

33.     Under Section 1 of the Joinder,  the Shermans further acknowledge that their liability under the Guaranty is not in any way diminished by the Modification Agreement.

34.     Section 2 of the Joinder provides that a failure of the Borrower after an Event of Default after the Effective Date to comply with a Cooperation Covenants shall subject Guarantor to recourse for the full Indebtedness.

35.     The Joinder further provides, "The obligations and liabilities of each Guarantor shall be joint and several." *Id.*, Sect. 3.

## THE LOAN DEFAULT

36.     The Maturity Date of the Loan (as defined in the Note) was August 1, 2017.  This date was reaffirmed in the Modification Agreement.

37.     The loan went into default in August 2017 as a result of Hirsch failing to pay all amounts due and owing by the Maturity Date, as required.

38.     On or about August 3, 2017, Hirsch was sent a Notice of Default.  *See* August 3, 2017 Notice of Default (a true and correct copy of which is attached hereto as Exhibit Q).

39.     Since that default, Hirsch has failed to turn over all Rents as required under the Mortgage and under the Assignment.[5]  To the extent Hirsch fails to cooperate in the turnover of the Property to MSCI, that will constitute a further default under the Modification Agreement.

40.     On October 27, 2017, a Notice of Default and Demand for Payment was sent to the Shermans, as Guarantors under the Loan Documents (a true and correct copy of this letter is attached hereto as Exhibit R).  This Notice of Default informed the Shermans that Hirsch was in default under the Note and other Loan Documents and demand was made under the Guaranty.

41.     To date, Hirsch is in default of its obligations under the Loan Documents, including its obligation to pay all amounts due and owing on the Note as of the Maturity Date.

42.     To date, the Shermans, despite their obligations being triggered and demand being made, have refused to honor their obligations under the Guaranty.

43.     The current outstanding principal balance due on the loan, not including interest, late charges, attorneys' fees and other costs of collection, is approximately $2,594,000.

## COUNT I
## BREACH OF LOAN DOCUMENTS
### (AGAINST HIRSCH)

44.     MSCI repeats and realleges the allegations contained in all prior and subsequent paragraphs of this Complaint as if fully set forth in this Count I of the Complaint.

45.     The Loan Documents are valid and binding agreements duly assigned to MSCI.

46.     MSCI and its predecessors have complied with all of their obligations under the Loan Documents.

47.     Under the Loan Documents, Hirsch is obligated to pay all amounts due under the Note and Mortgage (as amended and modified) by the Maturity Date.

---

[5]     Capitalized terms in the paragraph shall have the meaning ascribed to them in the Mortgage and in the Assignment, as applicable.

ME1 26045337v.2

48.    In particular, under the Note "the balance of said principal sum together with all accrued and unpaid interest thereon shall be due and payable on August 1, 2017 (the '**Maturity Date**')." Note at p. 1 (emphasis in original).

49.    The failure to pay "the entire principal balance of the Note … on the maturity date" is an Event of Default under the Mortgage (as that term is defined in the Mortgage).  *See* Mortgage, Sect. 23(a).

50.    Hirsch failed to pay the entire principal balance of the Note on the Maturity Date.

51.    Hirsch has failed to turnover all Rents due following its default under the Note.

52.    These failures constitute material breaches of the Loan Documents.

53.    To the extent Hirsch fails to cooperate in the turnover of the Property, that will constitute a further breach of the Modification Agreement.

54.    As a result of Hirsch's material breaches of the Loan Documents, MSCI has suffered, and will continue to suffer, significant damages.

**COUNT II**
**BREACH OF GUARANTY – FULL RECOURSE LIABILITY**
**(AGAINST THE SHERMANS, JOINTLY AND SEVERALLY)**

55.    MSCI repeats and realleges the allegations contained in all prior and subsequent paragraphs of this Complaint as if fully set forth in this Count II of the Complaint.

56.    Under the Guaranty, the Shermans are irrevocably and unconditionally liable to MSCI for the Guaranteed Obligations (as that term is defined in the Guaranty).

57.    As acknowledged by the Shermans in the Joinder, a full-recourse Guaranteed Obligation arose as a result of Hirsch's filing for bankruptcy protection.

58.    Despite demand, the Shermans have not honored their obligations under the Guaranty.

ME1 26045337v.2

59.     The Shermans are therefore jointly and severally liable for the full amount of the Debt (as that term is defined in the Guaranty).

60.     To the extent Hirsch fails to cooperate in the turnover of the Property, that will constitute a further basis for imposing full recourse liability against the Shermans under the Joinder.

61.     As a result of the Shermans' material breaches of the Guaranty, MSCI has suffered, and will continue to suffer, significant damages.

**COUNT III**
**BREACH OF MORTGAGE AND GUARANTY – FAILURE TO TURNOVER RENTS**
**(AGAINST HIRSCH AND THE SHERMANS, JOINTLY AND SEVERALLY)**

62.     MSCI repeats and realleges the allegations contained in all prior and subsequent paragraphs of this Complaint as if fully set forth in this Count III of the Complaint.

63.     Under Section 8(a) of the Mortgage and Section 1 of the Assignment, Hirsch is obligated to turnover all Rents upon an Event of Default.

64.     Hirsch has failed to comply with this obligation.

65.     Under the Guaranty, the Shermans are irrevocably and unconditionally liable to MSCI for the Guaranteed Obligations.

66.     A Guaranteed Obligation arose as a result of Hirsch's failure to turnover all Rents following the occurrence of an Event of Default.

67.     Despite demand, the Shermans have not honored their obligations under the Guaranty.

68.     Hirsch and the Shermans are therefore jointly and severally liable for all Rents that Hirsch has failed to turnover.

69.     As a result of Hirsch's breaches of the Mortgage, MSCI has suffered, and will continue to suffer, significant damages.

70.     As a result of the Shermans' breaches of the Guaranty, MSCI has suffered, and will continue to suffer, significant damages.

**COUNT IV**
**BREACH OF THE MODIFICATION AGREEMENT AND JOINDER**
**(AGAINST THE SHERMANS, JOINTLY AND SEVERALLY)**

71.     MSCI repeats and realleges the allegations contained in all prior and subsequent paragraphs of this Complaint as if fully set forth in this Count IV of the Complaint.

72.     Under the Modification Agreement, upon the occurrence of an Event of Default after the Effective Date (which has occurred), the Borrower Parties (*i.e.*, Hirsch and the Shermans) are obligated to cooperate with the Lender's exercise of its rights and remedies against the Borrower Parties with respect to, among other things, the Collateral.  *See* Modification Agreement, Sect. 5.2(b)(ii).  (Capitalized terms in this paragraph shall have the meaning ascribed to them in the Modification Agreement.)

73.     Under the Joinder, the Shermans are liable in the event they or Hirsch fail to comply with the Cooperation Covenants (as that term is defined in the Modification Agreement).

74.     Hirsch has not complied with the Cooperation Covenants by, among other things, failing to turnover all Rents.  To the extent Hirsch fails to cooperate in the turnover of the Property, that will constitute a further breach of the Cooperation Covenants.

75.     Hirsch's failure to comply with the Cooperation Covenants subjects the Shermans to full recourse liability for the full Indebtedness (as that term is defined in the Modification Agreement).

ME1 26045337v.2

76.     The Shermans are therefore jointly and severally liable for the full amount of the Indebtedness (as that term is defined in the Modification Agreement).

77.     As a result of the above breaches, MSCI has suffered, and will continue to suffer, significant damages.

## COUNT V
## CONVERSION
### (AGAINST HIRSCH AND ANDREW SHERMAN)

78.     MSCI repeats and realleges the allegations contained in all prior and subsequent paragraphs of this Complaint as if fully set forth in this Count V of the Complaint.

79.     Pursuant to the terms of the Mortgage, all Rents relating to the Property were absolutely and unconditionally assigned to, and thus are the property of, the Mortgagee.  *See e.g.,* Mortgage, Section 8(a).

80.     Under Section 8(a) of the Mortgage, the Mortgagee granted Hirsch a revocable license to collect those Rents on its behalf, but that license was revoked upon Hirsch's default under the Loan Documents.

81.     Similarly, pursuant to the terms of the Assignment, all Rents relating to the Property were absolutely and unconditionally assigned to, and thus are the property of, the Assignee.  *See e.g.,* Assignment of Leases and Rents, Sect. 1.

82.     Under Section 1 of the Assignment, the Assignee granted Hirsch a revocable license to collect those Rents on its behalf, but that license was revoked upon Hirsch's default under the Loan Documents.

83.     Despite the revocation of its license to collect Rents, Hirsch continues to collect Rents for its own benefit, and without turning over those Rents to MSCI (as the current

ME1 26045337v.2

Mortgagee and Assignee as those terms are defined in the Mortgage and Assignment, respectively).

84.     In doing so, Hirsch has exercised an act of ownership, dominion, and/or control over MSCI's personal property to which it has no right of possession.

85.     Hirsch's conduct has been intentional and wrongful.

86.     Hirsch's conduct has deprived MSCI, the rightful owner of these Rents, the use and enjoyment of these Rents.

87.     Hirsch's conduct constitutes the conversion of MSCI's property.

88.     Hirsch acts through Andrew Sherman, who is directing the conversion of Rents and is jointly and severally liable for such wrongful conduct.

89.     As a result of the conversion of MSCI's property by Hirsch and Andrew Sherman, MSCI has suffered, and will continue to suffer, significant damages.

**WHEREFORE**, plaintiff MSCI 2007-IQ16 Blue Hill Avenue, LLC, hereby demands judgment in its favor and against Hirsch and the Shermans, jointly and severally, as follows:

1.     For compensatory damages, including all principal, interest, late charges, and any other sums due under the Loan Documents;

2.     For attorneys' fees and costs of collection;

3.     For pre- and post-judgment interest; and

4.     For all other and further relief the Court deems just and equitable.

ME1 26045337v.2

Respectfully submitted,

**MSCI 2007-IQ16 BLUE HILL AVENUE, LLC,**

By its Attorneys,

MCCARTER & ENGLISH, LLP

/s/ David Himelfarb
David Himelfarb, BBO #649596
265 Franklin Street
Boston, MA 02110
Tel. 617-449-6500
Fax 617-326-3086
dhimelfarb@mccarter.com

Dated :  December 1, 2017

14

## <u>VERIFICATION</u>

I, Ryan P. Lagan, hereby certify under the pains and penalties of perjury that I have reviewed the foregoing Verified Complaint and that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief based on my personal knowledge and on information made reasonably available to me in my capacity as asset manager of LNR Partners, LLC, the special servicer and attorney in fact for MSCI 2007-IQ16 Blue Hill Avenue, LLC.  Certain facts set forth in this Complaint are based on information compiled from business records and information presently available to MSCI 2007-IQ16 Blue Hill Avenue, LLC, LNR Partners, LLC, and/or from other sources I believe to be reliable.  As to such information, I believe the facts set forth in the Complaint to be true.

By: <u>/s/ Ryan P. Lagan</u>
         Ryan P. Lagan

Dated:  November 30, 2017

15

ME1 26045337v.2